*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1799**

State of Minnesota,
Respondent,

vs.

Stevan Andre Wilkins,
Appellant.

**Filed March 28, 2016
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-CR-11-1225

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Laura Rosenthal, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Johnson, Judge.

# UNPUBLISHED OPINION

**SCHELLHAS**, Judge

        Appellant argues that the district court abused its discretion by denying his sentence-correction motion. We affirm.

**FACTS**

On January 5, 2011, police arrested appellant Stevan Andre Wilkins and seized 3.51 grams of cocaine from Wilkins's person and 34.01 grams of cocaine from Wilkins's residence. Respondent State of Minnesota charged Wilkins with first-degree controlled-substance crime (possession of 25 grams or more of mixture containing cocaine). On May 25, Wilkins acknowledged two prior convictions of fifth-degree controlled-substance crime and pleaded guilty to an amended charge of second-degree controlled-substance crime (possession of six grams or more of mixture containing cocaine) in exchange for the state's conditional agreement to a bottom-of-the-box sentence of 58 months' imprisonment. On September 14, the district court sentenced Wilkins to 58 months' imprisonment and imposed a $10,000 fine for second-degree controlled-substance crime as a subsequent controlled-substance offense.

In July 2015, Wilkins moved for correction of sentence, seeking a reduction of the $10,000 fine to $50. The district court denied the motion.

This appeal follows.

**D E C I S I O N**

"[A district] court may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9. Appellate courts review for abuse of discretion a district court's denial of a sentence-correction motion under Minn. R. Crim. P. 27.03, subd. 9. *Nunn v. State*, 868 N.W.2d 230, 232 (Minn. 2015). A district court acts within its discretion in denying a sentence-correction motion so long as the denial neither was "based on an erroneous application of the law" nor was "against logic or the facts in the record." *Id.*

"The United States and Minnesota Constitutions both protect individuals from excessive fines." *Miller v. One 2001 Pontiac Aztek*, 669 N.W.2d 893, 895 (Minn. 2003) (citing U.S. Const. amend. VIII; Minn. Const. art. I, § 5). "[A] fine is unconstitutionally excessive if it is grossly disproportional to the gravity of the offense." *State v. Rewitzer*, 617 N.W.2d 407, 413 (Minn. 2000). In analyzing the proportionality of a fine, the reviewing court considers three factors: (1) a comparison of "the gravity of the offense with the severity of the fine," (2) a comparison of the contested fine with fines imposed for other offenses in the same jurisdiction, and (3) a comparison of the contested fine with fines imposed for the same offense in other jurisdictions. *Id.* at 414–15.

In denying Wilkins's sentence-correction motion, the district court identified the three proportionality factors, applied the first and third factors, explained its decision to discount the second factor, and reasoned as follows in concluding that the $10,000 fine was not grossly disproportional to the gravity of Wilkins's offense:

A. Gravity of the Offense

1. This offense was Mr. Wilkins' 3rd drug offense in as many years (his 4th drug offense since 2005).

2. Three of the prior offenses involved the *sale* of controlled substances.

3. In the 2009 offense, Mr. Wilkins was found to possess and own handguns and aggressive dogs.

4. At the time of sentencing on this matter, Mr. Wilkins also had a pending charge . . . involving the *sale* of cocaine.

5. While Mr. Wilkins had originally qualified for and been appointed the public defender, he subsequently retained private counsel to represent him on this matter.

3

6. The $10,000 fine was only 7.7 times higher than the amount of drugs he was found to have possessed.

Mr. Wilkins' repeated pattern of criminal behavior involving the sale of controlled substances supports the conclusion that the harshness of the fine imposed is commensurate with the gravity of his offense and its impact on the community.

B. Comparison of fine (within jurisdiction)

While the [sentencing] guidelines commission has recorded that only 2 defendants out of a total of 564 defendants had received a fine of $10,000, the data is incomplete: there were another 837 defendants whose fines were not recorded and are not included in the state-wide statistics.

In any event, the fine in this matter was imposed after taking into consideration all the facts and circumstances particular to Mr. Wilkins [and] other defendants' fines were not part of the calculation.

C. Comparison of fine (other jurisdictions)

Under the Federal Sentencing Guidelines, Mr. Wilkins' conviction was a level 14 offense for which the recommended range of fine is $4,000 to $40,000. This Court's fine fell reasonably within that range.

Wilkins argues that we should reverse the district court's order denying his sentence-correction motion and remand for imposition of "a more reasonable and non-excessive fine." He suggests that the court erred by relying on factors that were not part of Wilkins's present controlled-substance offense and that the court's rationale for denying his sentence-correction motion was "based on the faulty premise that the details of [his] prior and pending offenses were somehow relevant to the issue of the gravity of the current offense." But Wilkins offers no authority to support his apparent argument that a court

4

cannot consider a defendant's criminal history in assessing the gravity of his present offense, and we have found no Minnesota authority directly on point.

In *Rewitzer*, the defendant pleaded guilty to controlled-substance crimes in the second, third, and fifth degrees for three separate drug sales, and the district court imposed $273,600 in fines and surcharges. 617 N.W.2d at 409. The defendant had no adult criminal record but had three offenses on his juvenile record for sale of a controlled substance, discharge of a dangerous weapon, and shoplifting. *Id.* "The court of appeals noted that the district court carefully scrutinized [the defendant]'s previous criminal history and his strong financial motivation for selling drugs, did not credit [the defendant]'s promise to reform, and found that previous judicial leniency had done nothing to rehabilitate him." *Id.* at 411 (quotation omitted). Although the supreme court held that the fine was excessive and reversed this court's affirmance of the district court's denial of the defendant's postconviction petition, the supreme court did not assign error to, or suggest disapproval of, the district court's consideration of the defendant's criminal history in its proportionality analysis. *See id.* at 410–11, 414–15. Rather, the supreme court concluded that the defendant's fines and surcharges "were disproportionately harsh when compared with (1) the gravity of his offenses, (2) the fines that can be imposed for other same-level offenses in Minnesota, and (3) the fines imposed for the same offenses in other jurisdictions." *Id.* at 415.

Persuasive authority exists to support the consideration of the defendant's criminal history in assessing the proportionality of a contested fine. *See, e.g.*, *State v. Webb*, 856 N.W.2d 171, 172, 176 (N.D. 2014) (noting that defendant "was charged with three other

5

drug related offenses in addition to the one to which he pleaded guilty" and "had two prior drug related felony convictions on his record as well as a felony conviction for aggravated burglary" before concluding that defendant "failed to make a prima facie showing that the $10,000 fine is grossly disproportionate to the offense"); *State v. Goodenow*, 282 P.3d 8, 17 (Or. Ct. App. 2012) ("When assessing the gravity of a defendant's crime [for purposes of a proportionality analysis], courts consider both the general characteristics of the crime and the specific characteristics of the defendant's conduct. . . . Regarding the particular characteristics of the crime, courts consider the actual harm risked and caused by the conduct, as well as any mitigating or aggravating circumstances, such as the defendant's motive and criminal history."); *Commonwealth v. Mitchell*, 833 A.2d 1220, 1223 (Pa. Commw. Ct. 2003) (noting that defendant's "current four [controlled-substance] offenses were preceded by three convictions for possession with intent to deliver," reasoning that defendant's "seven total convictions related to drug trafficking raise concerns about the threat [he] poses to the community," and concluding that "forfeiture [of defendant's vehicle] is not grossly disproportional to the gravity of [his] current four felony offenses"). And, although "[u]npublished opinions of the Court of Appeals are not precedential," Minn. Stat. § 480A.08, subd. 3 (2014), we have considered a defendant's criminal history as relevant to a proportionality analysis in at least one unpublished case, *see Wien v. State*, No. A05-380, 2006 WL 330098, at *2–3 (Minn. App. Feb. 14, 2006) (stating that defendant's "significant criminal history, including two prior controlled substance offenses," suggested that $15,000 fine "was proportionate to the gravity of his [present controlled-substance] offense"), *review denied* (Minn. Apr. 26, 2006).

6

We therefore reject Wilkins's unsupported argument that a court cannot consider a defendant's criminal history in determining the gravity of his present offense. *See State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." (quotation omitted)). We conclude that the district court did not misapply the law by considering Wilkins's prior convictions and pending charge in its proportionality analysis.

Next, Wilkins attempts to minimize the gravity of his conviction of second-degree controlled-substance crime, claiming that "there is . . . nothing unique or particularly concerning about this drug offense" and characterizing the offense as "a garden variety controlled buy" under "run-of-the-mill circumstances." But the record shows that Wilkins possessed nearly 40 grams of cocaine on the date of his arrest and that he had prior controlled-substance convictions. On these facts, Wilkins could have been charged with first-degree controlled-substance crime as a subsequent controlled-substance offense, which carries a mandatory minimum sentence of four years in prison and is punishable by up to 40 years' imprisonment and a $1,000,000 fine. Minn. Stat. § 152.021, subds. 2, 3(b) (2010). Indeed, "the Minnesota Legislature has targeted controlled-substance crime because of its social and economic impact and has set severe maximum penalties." *Borgen v. 418 Eglon Ave.*, 712 N.W.2d 809, 813 (Minn. App. 2006) (quotation omitted). Accordingly, we conclude that the district court's assessment of "the gravity of [Wilkins's] offense and its impact on the community" was not against logic or the facts in the record.

Wilkins also argues that the district court committed legal error by disregarding the "extreme nature" of the $10,000 fine compared to the typical fine imposed for second-degree controlled-substance crime in Minnesota. Citing *Rewitzer*, Wilkins correctly identifies the second factor of the proportionality analysis as a "comparison of the contested fine with fines imposed for the commission of *other crimes* in the same jurisdiction." (Emphasis added.) Yet without any explanation or authority, Wilkins asserts that the court was required to consider and credit "data from the Sentencing Guidelines Commission showing, of the cases where the fine was reported, 99% of the individuals convicted of the *same offense* in Minnesota between 2008 and 2011 received lower fines than Wilkins or no fine." (Emphasis added.) We conclude that the court did not commit legal error by declining to consider the sentencing-guidelines-commission statistics in its proportionality analysis. *Cf. Borgen*, 712 N.W.2d at 813–14 (stating that second factor involves "analyz[ing] the severity level of the offense and look[ing] at the penalties for *other offenses at that level*" and stressing that "no court, including the United States Supreme Court, has analyzed this prong by looking at actual imposition of fines, but rather by considering what fines are permissive or allowable" (emphasis added)).

We likewise reject any argument by Wilkins that the district court abused its discretion by failing to fully consider the second factor of the proportionality analysis. The court explained that its primary focus was on "the facts and circumstances particular to Mr. Wilkins"—i.e., the first proportionality factor. Especially in light of Wilkins's failure to support his sentence-correction motion with data or argument that was actually relevant to the second factor, we conclude that the court did not misapply the law by discounting the

8

second factor in its proportionality analysis. *Cf. State v. Kujak*, 639 N.W.2d 878, 883 (Minn. App. 2002) (stating that "[n]o one factor is dispositive" to proportionality analysis), *review denied* (Minn. Mar. 25, 2002).

Finally, Wilkins asserts that "due to [his] financial and medical hardships, he is unable to make payments towards the $10,000 fine at this time." He correctly notes that "under the federal [sentencing] guidelines, the district court is required to specifically consider a person's ability to pay a fine and the burden the fine will create." But in Minnesota, "a sentencing judge need not specifically find that a defendant has the ability to pay a fine before imposing the fine as part of the defendant's sentence." *Perkins v. State*, 559 N.W.2d 678, 693 (Minn. 1997). A reviewing court may consider a defendant's ability to pay a fine in assessing its proportionality. *See Rewitzer*, 617 N.W.2d at 414−15 (holding that $228,000 fine was excessive and reasoning in part that "at [the defendant]'s current rate of repayment, it will be well over 300 years before his fines are paid off"). But Wilkins points to no Minnesota authority, and we have found none, that mandates such consideration. Moreover, although Wilkins claims that he averred in support of his sentence-correction motion that "the $10,000 fine has become a huge burden," he failed to provide the district court with any evidence that the state had undertaken any collection efforts or that he lacked assets with which to satisfy any portion of the fine. We conclude that Wilkins's ability-to-pay arguments provide no grounds for relief.

**Affirmed.**